Ronald SUSTER, et al., Plaintiffs,

v.

Jonathan W. MARSHALL,
et al., Defendants.

No. 1:96 CV 1736.

United States District Court,
N.D. Ohio,
Eastern Division.

Sept. 26, 2000.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Mark A. Ferguson, Warrensville Heights, Timothy J. Grendell, Cleveland, OH, for plaintiff.

Elise Porter, Office of the Attorney General, Michael J. Renner, Office of the Attorney General, Steven L. Taylor, Office of Prosecuting Attorney, Columbus, OH, for defendant.

## ORDER

OLIVER, District Judge.

Plaintiffs Ronald Suster ("Suster") and Patricia Cleary ("Cleary"), both of whom currently serve as judges on the Court of Common Pleas for Cuyahoga County, Ohio, bring this action to challenge the constitutionality of Judicial Canons VII(C)(6) and VII(C)(8) of the Ohio Code of Judicial Conduct. Both challenged canons limit judicial campaign expenditures. Plaintiffs' terms expire on December 31, 2000, and both are seeking reelection for terms to begin in 2001. Plaintiffs challenge Canons VII(C)(6) and VII(C)(8), seeking: (1) a declaratory judgment that the provisions violate their right to free speech, guaranteed by the First Amendment to the Constitution; (2) a declaratory judgment that the provisions violate their right to substantive due process; and (3) an injunction enjoining Defendants from enforcing the canons. Currently pending before the court are the parties' cross motions for summary judgment. For the reasons stated below, Plaintiffs' Motion for Summary Judgment (Doc. No. 116) is granted in part and denied in part and Defendants' Motion for Summary Judgment (Doc. No. 117) is also granted in part and denied in part.

## I. FACTS AND PROCEDURAL HISTORY

Effective July 1, 1995, the Ohio Supreme Court enacted Judicial Canons VII(C)(6) and VII(C)(8). Judicial Canon VII(C)(6), in its original form, prohibited any candidate in a judicial election from spending more than $75,000.00 in a race for judgeship for the Ohio Common Pleas Court. The provision also prohibited a judicial candidate from spending more than $18,750.00 in the primary election. Canon VII(C)(8) prohibits anyone from using money raised in a previous non-judicial campaign in a subsequent judicial campaign. Suster and Cleary, in their roles as incumbent judges and as judicial candidates, are subject to the Judicial Canons, violation of which may lead to disciplinary sanctions, fines, and related punishment.

During Suster's 1996 campaign for re-election, he brought suit challenging the constitutionality of the primary campaign spending limit of $18,750.00 ("*Suster* I"). Prior to a ruling in *Suster* I, however, the Ohio Supreme Court amended and removed the portion of Canon VII(C)(6) which imposed an expenditure limit in primary elections. On February 20, 1996, without a hearing, a Final Consent Decree was entered enjoining Defendants from enforcing the primary election campaign spending limit. Suster, thereafter, spent nearly $73,000.00 to communicate his qualifications and experience to the voters.

Only $2,000.00 shy of violating Canon VII(C)(6)'s $75,000.00 spending cap, Suster filed the instant action seeking declaratory and injunctive relief from the amended Judicial Canon VII(C)(6) ("*Suster* II"). Cleary joined in the suit, arguing that when her term expires in December, 2000, she would like to spend more than $75,000.00 on her reelection campaign. Suster also sought to enjoin and have declared unconstitutional Judicial Canon VII(C)(8) because he wanted to use left-over funds from his prior campaign for state representative toward his efforts for a judgeship. Finally, Cleary and Suster both maintained that as registered voters, the challenged canons violated their First Amendment rights by abridging the total amount of campaign speech a judicial candidate may utter. Plaintiffs claimed that as voters, they are entitled to consume as much political campaign speech as judicial candidates might wish to express.

After a hearing on Plaintiffs' motion for a preliminary injunction, this court determined that there was a strong likelihood that they would succeed in establishing on the merits that Canon VII(C)(6) was unconstitutional. This court determined, however, that Plaintiffs were unlikely to succeed in establishing on the merits that Canon VII(C)(8) was unconstitutional. Consequently, the court enjoined Defendants from enforcing Canon VII(C)(6) and refused to enjoin Defendants from enforcing Canon VII(C)(8). On September 25, 1996, the court modified its original order to enjoin enforcement of Canon VII(C)(6) against Plaintiffs only.[1]

Defendants appealed that portion of this court's order regarding Canon VII(C)(6), and Plaintiffs cross-appealed the court's ruling with respect to Canon VII(C)(8). While the appeal was pending, the Ohio Supreme Court amended Canon VII(C)(6) again. The amended canon bases the spending limit for a candidate on the population of the candidate's judicial district. The amendment also increased the overall spending limits for larger jurisdictions.[2]

1. After this court's ruling on Suster's and Cleary's motion for a preliminary injunction, a number of judges sitting on the Cuyahoga County Court of Common Pleas and judicial candidates for such position moved to intervene as plaintiffs. This court granted all such motions and eventually extended the preliminary injunction order to include not only Plaintiffs and Intervenor–Plaintiffs, but also their respective opponents. *See* Orders of Oct. 22, 1996 and Nov. 1, 1996. The court also granted a motion by Nancy Russo, a judicial opponent of an intervening plaintiff, to intervene as a new party defendant, but denied her motion to have the case dismissed. None of the intervenors are named in the Amended Complaint now before the court.

2. In pertinent part, Canon VII(C)(6)(a) now reads:
Except as provided in division (C)(6)(b) of this canon, the total amount of expenditures made in the fund raising period allowed ... by the campaign committee of a judicial candidate shall not exceed the following:

\* \* \* \* \* \*

(iv) One hundred twenty-five thousand dollars in the case of a judicial candidate for a court of common pleas ... that serves a territorial jurisdiction with a population of more than seven hundred fifty thousand;

(v) One hundred thousand dollars in the case of a judicial candidate for a court of common pleas ... that serves a territorial jurisdiction with a population of more than two hundred fifty thousand but not more than seven hundred fifty thousand;

(vi) Seventy-five thousand dollars in the case of a judicial candidate for a court of common pleas ... that serves a territorial jurisdiction with a population of more than one hundred thousand but not more than two hundred fifty thousand;

Although Canon VII had been amended by the time the Sixth Circuit ruled on the parties' appeals, the court limited its review to the consideration of the preliminary injunction under the prior version of Canon VII(C)(6) and under Canon VII(C)(8). *See Suster v. Marshall,* 149 F.3d 523 (6th Cir.1998). In doing so, the court upheld this court's preliminary injunction order in whole, and remanded amended Canon VII(C)(6) to this court for a consideration of the constitutionality of the amended canon.[3] On remand, Plaintiffs amended their Complaint to claim that amended Canon VII(C)(6) violates their rights under the First Amendment ("*Suster* III").

This court in *Suster* II only preliminarily enjoined Defendants from enforcing the previous version of Canon VII(C)(6), and as just stated, the Sixth Circuit limited its review to the consideration of the preliminary injunction under the prior version of Canon VII(C)(6). Thus, in addition to determining the constitutionality of amended Canon VII(C)(6), the court in *Suster* III, the instant action, must determine whether Plaintiffs are entitled to a permanent injunction enjoining Defendants from enforcing the old Canon VII(C)(6). Neither Plaintiffs nor Defendants addressed this issue in their briefs in support of summary judgment. However, none of the relevant facts and circumstances have changed since the issuance of the preliminary injunction. Therefore, based on the court's reasoning in *Suster* II preliminarily enjoining the old Canon VII(C)(6) and the reasons articulated in the Sixth Circuit's decision affirming this court's opinion in *Suster* II, the court hereby permanently enjoins Defendants from enforcing the version of Canon VII(C)(6) at issue in *Suster* II against all parties who joined in the suit challenging that canon.

Unlike Canon VII(C)(6), Canon VII(C)(8) has not been substantively modified since either this court's or the Sixth Circuit's ruling on the preliminary injunction. However, Count II of Plaintiffs' Amended Complaint again claims that Canon VII(C)(8) violates the First Amendment. Both parties have moved for summary judgment on this claim. Plaintiffs advance the same arguments in support of their motion for summary judgment on this claim as they did in *Suster* II in support of their motion for a preliminary injunction with regard to this claim. Likewise, Defendants advance the same arguments in support of their motion for summary judgment on this claim as they did in

(vii) *Fifty thousand dollars in the case of a judicial candidate for a court of common pleas ... that serves a territorial jurisdiction with a population of one hundred thousand or less.*

Amended Canon VII(C)(6)(b) reads:

If a judicial candidate is opposed in a primary election, the limits contained in division (C)(6)(a) of this canon shall apply only during the general election period, and the total expenditures made by the campaign committee of the judicial candidate during the primary election period shall not exceed the following:

⁂ ⁂ ⁂ ⁂ ⁂ ⁂

(iv) Sixty-two thousand five hundred dollars in the case of a judicial candidate for a court of common pleas ... that serves a territorial jurisdiction with a population of more than seven hundred fifty thousand;

(v) Fifty thousand dollars in the case of a judicial candidate for a court of common pleas ... that serves a territorial jurisdiction with a population of more than two hundred fifty thousand but not more than seven hundred fifty thousand;

(vi) Thirty-seven thousand five hundred dollars in the case of a judicial candidate for a court of common pleas ... that serves a territorial jurisdiction with a population of more than one hundred thousand but not more than two hundred fifty thousand;

(vii) Twenty-five thousand dollars in the case of a judicial candidate for a court of common pleas ... that serves a territorial jurisdiction with a population of one hundred thousand or less.

3. Inasmuch as amended Canon VII(C)(6) would only apply in future elections, the court is not altogether clear as to why the Sixth Circuit remanded the case for consideration of this amended canon. It appears a challenge to the canon might have awaited a new lawsuit filed by a candidate contesting its applicability in an upcoming election. *See Spanagel v. Marshall,* No. 99 CV 2652 (N.D.Ohio 1999).

contesting Plaintiffs' motion for a preliminary injunction. Thus, for the reasons stated in the Sixth Circuit's decision in *Suster II*, 149 F.3d 523, and in this court's September 10, 1996 order with respect to Canon VII(C)(8), the court finds that Defendants are entitled to judgment as a matter of law on Count II of the Amended Complaint.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Both parties agree that the material facts in this case are not in dispute and that only questions of law remain.

### A. *Standing*

■ Defendants first contend that neither Suster nor Cleary have standing to bring the instant action. To establish Article III standing, Plaintiffs must demonstrate: (1) an injury in fact that is actual or threatened; (2) a causal connection between the defendants' conduct and the alleged injury; and (3) a substantial likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir.1999). In the present case, Plaintiffs have brought a pre-enforcement challenge pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. A declaratory judgment generally is sought before a completed injury-in-fact has occurred. *People's Rights Org. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998). Even when seeking declaratory or injunctive relief, the plaintiff must demonstrate actual present harm or a significant

possibility of future harm to justify pre-enforcement relief. *Id.*

■ Defendants assert that Plaintiffs cannot demonstrate an injury-in-fact because neither Suster nor Cleary have raised enough campaign funds to be at risk of violating the spending cap in amended Canon VII(C)(6). Defendants' argument is unavailing. No matter what the state of the Plaintiffs' campaign finances was at the time the parties filed their respective motions for summary judgment, there is a significant possibility that if the campaign expenditure limits remain in place, either or both of the Plaintiffs could exceed the applicable limits and thereby face disciplinary action. Moreover, Plaintiffs presently suffer an injury in fact by the very nature of the spending cap, which acts to deter them from raising sufficient campaign funds to carry their messages to the voters in the manner in which they would prefer. Finally, the Sixth Circuit chose to have the issue of the constitutionality of amended Canon VII(C)(6) heard in the context of this case rather than await new plaintiffs. Therefore, the court finds that Plaintiffs have alleged a sufficient injury-in-fact to meet the first prong of the standing requirement. Because there is a causal connection between the amended canon and Plaintiffs' alleged injury and a substantial likelihood that the injury will be redressed by a favorable decision, Plaintiffs have standing to pursue their claims.[4]

### B. *Ripeness*

■ Defendants next argue that this case is not ripe for review. A ripeness inquiry also has three factors which a court may consider: (1) the likelihood that the harm alleged will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the plaintiff's claims, and (3) the hardship to the parties in denying judicial relief at this stage. *Sam & Ali*,

---

4. Since Plaintiffs have standing as judicial candidates, the court need not address Defendants' argument that Plaintiffs do not have standing in their capacity as voters.

*Inc. v. Ohio Dep't of Liquor Control,* 158 F.3d 397, 400 (6th Cir.1998).

■ Defendants contend that the court lacks jurisdiction over this case because Plaintiffs cannot establish the first and third factors. As for the first factor, Defendants maintain that there is no likelihood that Plaintiffs will ever be disciplined pursuant to Canon VII(C)(6) because neither has sufficient campaign funds to violate the canon's spending limit. Defendants argue that Plaintiffs do not meet the third factor because another candidate has brought an action challenging Canon VII(C)(6). *See Spanagel v. Marshall,* No. 99 CV 2652 (N.D.Ohio 1999). According to Defendants, because Spanagel has standing and his case is ripe for review, there is no danger that Canon VII(C)(6) will evade review in the near future.

Again, it cannot be said that there is no likelihood that either of the Plaintiffs will violate Canon VII(C)(6)'s spending cap. The campaign season is not over, and both Plaintiffs have time to raise significant amounts of funds. Defendants' argument with respect to the hardship that Plaintiffs will suffer if this case is not heard is also unpersuasive. That a similar case has been brought by a candidate who has standing and whose case is ripe has no bearing on whether or not this case is ripe. *Spanagel* could be settled or voluntarily dismissed, either of which would render Defendants' argument moot. Accordingly, the court finds Plaintiffs' case ripe for adjudication.

## C. *First Amendment Challenge*

In *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the Supreme Court determined that because campaign expenditure limits burden core political speech, such restrictions should only be upheld if they are narrowly tailored to serve a compelling state interest. *See also McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 347, 115 S.Ct. 1511, 1519, 131 L.Ed.2d 426 (1995). According to the *Buckley* Court:

> [E]xpenditure limitations operate in an area of the most fundamental First Amendment activities. Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order 'to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'

*Id.* at 14, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (quoting *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957)).

### 1.

Defendants contend that the unique role of the judiciary renders *Buckley,* which concerned the constitutionality of federal legislation placing caps on campaign expenditures for federal executive and legislative officer elections, inapplicable to this case. They argue that, unlike other elected officials, judges must remain independent from popular opinion. Defendants point out that parties rely on the impartiality of the judge before whom their case is pending and that continued respect for the judiciary depends on its reputation for impartiality and fairness. Defendants further maintain that *Buckley* and the instant case are distinguishable because of the different purposes of the campaign laws at issue in either case, including the nature of the penalties for violations. Whereas the primary purpose of Canon VII is to ensure a legal system of the highest caliber and to instill and maintain public confidence in that system, Defendants assert that the purpose of the law at issue in *Buckley* was simply the regulation of elections involving federal executive and legislative officers.

On Defendants' appeal from this court's decision in *Suster II,* the Sixth Circuit considered and wholly rejected this argument:

> Review of the constitutionality of spending limits in *Buckley* was not based upon the line of reasoning that such limita-

tions should apply only to federal political campaigns. Rather, the constitutionality of such limitations was based upon the reasoning that any expenditure limitation—irrespective of the kind of election involved (state, federal, judicial, non-judicial, civil penalties, criminal penalties, etc.), "[i]n a republic where the people are sovereign, [and] the ability of the citizenry to make informed choices among candidates for office is essential," must be narrowly tailored and serve a compelling government interest in order to infringe upon a "most fundamental First Amendment activity." *Id.*

\* \* \* \* \* \*

Although Defendants cite several cases to support their argument that there is a distinct difference between judicial officers and political officers, this Court finds that an election candidate does not forego his or her First Amendment rights simply because he or she decides to seek a judicial office, rather than a non-judicial one.

Further, to the extent Defendants have attempted to raise the argument that *Buckley* was not intended to apply to state elected judicial officers because federal judges are appointed, not elected, such an attempt misses the mark.

While it is true that the issue in *Buckley* involved federal campaign legislation, that fact simply illustrates that Congress, in enacting the legislation, did not intend for the legislation to apply to state elections. There is not the slightest indicia, however, that the Supreme Court, in its ruling, sought only to protect the First Amendment rights of just federal election candidates. To the contrary, the Supreme Court has already determined that states have no greater power to restrain an individual's freedoms protected by the First Amendment than does the Congress of the United States. *Wallace v. Jaffree,* 472 U.S. 38, 48–49, 105 S.Ct. 2479, 2485, 86 L.Ed.2d 29 (1985).

Given the fundamental nature of the right involved, this Court is of the opinion that the language of *Buckley* and its progeny have necessarily determined, irrespective of the kind of position sought, that any spending restriction in any electoral campaign process is an infringement on a candidate's First Amendment rights, and is subject to "exacting scrutiny." *Buckley,* 424 U.S. at 44–45, 96 S.Ct. 612, 46 L.Ed.2d 659. The guarantees of the First Amendment are not shaped and reshaped simply because a litigant wishes to distinguish one type of election from another. Neither the First Amendment, nor *Buckley* can be read so narrowly.

*Suster II,* 149 F.3d 523, 529–30 (6th Cir. 1998). For these same reasons, the court finds Defendants' argument that *Buckley* is inapplicable to the instant case unpersuasive.

### 2.

■ Defendants next argue that Canon VII(C)(6) does not violate the First Amendment because it does not burden political speech. As support, Defendants cite to numerous cases in which courts have upheld content-based restrictions against judicial candidates that would have otherwise been held unconstitutional if applied to non-judicial candidates. With this argument, Defendants have again attempted to revive an argument squarely addressed and rejected by the Sixth Circuit. As the Sixth Circuit recognized, the *Buckley* Court found that limits on campaign expenditures restrict a candidate's "quantity of expression" and are not time, place and manner restrictions:

> The critical difference between [spending limits] and those time, place, and manner cases is that the present [Canon's] . . . expenditure limitations impose direct quantity restrictions on political communication and association by groups, candidates, and political parties in addition to any reasonable time, place, and manner regulations otherwise imposed.

> A restriction on the amount of money a person or group can spend on [judicial]

communication during a campaign necessarily reduces the quantity of expression ... and the size of the audience reached. This is because virtually every means of communicating ideas in today's mass society requires the expenditure of money. The distribution of the humblest handbill or leaflet entails printing, paper, and circulation costs.

*Suster II*, 149 F.3d at 530 (quoting *Buckley*, 424 U.S. at 18–19, 96 S.Ct. 612, 46 L.Ed.2d 659) (footnotes omitted). ·See also *Gable v. Patton*, 142 F.3d 940, 953 (6th Cir.1998) (noting that campaign expenditure limits cannot be characterized as a mere time, place and manner restriction). The Sixth Circuit further explained that "given the fact that other courts have already allowed such content-based restrictions and limitations to be placed on judicial campaigns in order to limit bias and the appearance of corruption, Defendants are more hard-pressed to justify the additional infringement on the quantity of Plaintiffs' exercise of their fundamental First Amendment rights. Hence, Defendants' alleged time, place and manner argument is insufficient and must fail." *Suster II,* 149 F.3d at 530.

### 3.

■ Finally, Defendants maintain that even if this court relies on *Buckley* and rejects Defendants' argument that Canon VII(C)(6) does not burden political speech, the canon is constitutional because it is narrowly tailored to meet a compelling governmental interest. The court does not agree.

### a.

In ruling on *Suster II*, the Sixth Circuit explicitly held that the prevention of corruption is the only interest to which it would give credence as compelling enough to infringe upon the First Amendment rights of a candidate seeking an electoral office. 149 F.3d at 532 (citing *Federal Election Comm'n v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 496–97, 105 S.Ct. 1459, 84 L.Ed.2d 455 (1985)). Defendants maintain that preservation of the impartiality and the independence of the judiciary are also compelling state interests that can be considered by this court. Plaintiffs do not disagree that these are compelling interests, and indeed, assert that the prevention of corruption "necessarily includes the preservation of impartiality." Pls.' Br. in Opp. to Defs.' Mot. for Summ. J. at 21..

Whether the Supreme Court would interpret "the prevention of corruption" broadly enough to encompass "the preservation of impartiality" or whether the Court would recognize "the preservation of impartiality" itself as a constitutionally sufficient justification for infringing upon a candidate's freedom of speech does not affect the outcome of this case. Even assuming that preservation of the impartiality and independence of the judiciary are compelling state interests, Canon VII(C)(6) is not narrowly tailored to meet such interests.

### b.

■ A statute tending to infringe First Amendment freedoms must be so narrowly tailored that it infringes those freedoms by the least restrictive means possible. *Anderson v. Celebrezze*, 460 U.S. 780, 806, 103 S.Ct. 1564, 1579, 75 L.Ed.2d 547 (1983) ("[i]f the State has open to it a less drastic way of satisfying its legitimate interests, it may not choose a ... scheme that broadly stifles the exercise of fundamental personal liberties"). *See also Brown v. Hartlage*, 456 U.S. 45, 54, 102 S.Ct. 1523, 1529, 71 L.Ed.2d 732 (1982) (a "restriction [must] operate without unnecessarily circumscribing protected expression"). According to Defendants, "Canon 7, as recently modified, is now closely drawn to avoid unnecessary abridgment of First Amendment freedoms." Defs.' Mot. for Summ. J. at 31. As with Defendants' previous arguments, the majority of Defendants' arguments regarding whether Canon VII is narrowly tailored closely mirrors those raised by Defendants in *Suster II*. The court will address Defendants' argument specifically relating to the amendments to

Canon VII after first addressing the arguments Defendants have raised previously.

### (i)

In ruling on *Suster II*, both the Sixth Circuit and this court found that a cap on the amount a candidate may spend in pursuit of elected office has little nexus to the state interest of prevention of corruption. As this court held in *Suster II*:

> [U]nlike a campaign contributor, a candidate's dollars are traded not for possible political favors but for "political communication" through buying handbills, hiring halls for speeches and rallies, and purchasing advertising in broadcast and print media. *Buckley*, 424 U.S. at 19, 96 S.Ct. at 634–35. Thus, not even the governmental interest of preventing corruption or the appearance of corruption will normally "justify the restriction on the quantity of political expression imposed by ... campaign expenditure limitations." *Id.* at 55, 96 S.Ct. at 652.... There is virtually no link between campaign expenditure limits and the prevention of corruption. Regardless of whether a candidate is pursuing judicial, legislative, or executive office, any political favors he might owe correlate with the size of his campaign contributions, not the size of his expenditures.

*Suster v. Marshall ("Suster II")*, 951 F.Supp. 693, 698, 699 (N.D.Ohio 1996).

The Sixth Circuit agreed. It noted that while Defendants produced a poll indicating that a large percentage of voters believe that a proposal limiting the total amount a candidate may spend would be helpful to limit the influence of campaign contributions on judicial decisions, Defendants had failed to proffer any evidence showing a correlation between campaign expenditures and any corruption. *Suster II*, 149 F.3d at 532. Indeed, the Sixth Circuit found it significant that "all of the evidence presented by Defendants appear[ed] to suggest that the problem of corruption has resulted from problems with campaign contributions, not expenditures." *Id.*

In support of the constitutionality of amended Canon VII(C)(6), Defendants again have cited to several studies indicating that large percentages of individuals believe that limits on campaign spending would be useful in helping to improve the fairness and integrity of the judiciary. *See* Defs.' Mot. for Summ. J. at 31–33. However, as in *Suster II*, a review of these studies indicates that they were in large part concerned with campaign contributions rather than campaign spending. Moreover, as with the evidence presented in *Suster II*, a number of the study results "indicate that voters want more information, not less." *Suster II*, 149 F.3d at 532. As the Sixth Circuit recognized, corruption can be minimized through unlimited campaign expenditures "by promot[ing] and establish[ing] an electorate that is informed and well-aware." *Id.*

### (ii)

In *Suster II*, both this court and the Sixth Circuit also rejected Defendants' argument that campaign expenditure limits ensure the independence of the judiciary. As this court stated:

> The Supreme Court has stated clearly that while limiting campaign contributions may ensure the independence of elected candidates, by limiting the opportunity for "quid pro quo" political favors, limits on campaign expenditures do not have any direct nexus to this type of corruption. *Buckley*, 424 U.S. at 54–57, 96 S.Ct. at 651–53; *see also Shrink Missouri*, 71 F.3d at 1426. Limiting the size of campaign contributions can ensure a judge is not beholden to a large contributor; limiting the candidate's expenditures does not have this effect. Thus, the limit on total campaign expenditures imposed by Canon 7(C)(6) is simply not narrowly tailored to achieve the state interest of ensuring the independence of the judiciary.

*Suster II*, 951 F.Supp. at 700. This court further found that because "spending limits can provide an undue advantage to incumbents and candidates with well-

known names, ... campaign spending limits carry their own problems and may not improve the public's trust in its judges at all." *Id.*

The Sixth Circuit affirmed this court's holding, stating that "it is not clear to the Court how Defendants can link a spending limitation on a candidate's own money to ... an assurance [that a candidate is 'beholden to no one.'] ... [T]he very fact that the candidate is allowed to spend his or her own money without any restriction is, in fact, the assurance that the candidate is 'beholden to no one.' " *Suster II*, 149 F.3d at 532.

### (iii)

Finally, this court found, and the Sixth Circuit agreed, that Canon VII(C)(6) cannot be said to infringe First Amendment freedoms by the least restrictive means possible. Both courts found that more narrowly tailored methods of preserving the impartiality and independence of the judiciary exist, "not the least of which include enforcing and publicizing existing rules regarding contribution limits, or mandating a judge's recusal if a party or attorney has made campaign contributions of a certain size." *Suster II*, 951 F.Supp. at 700–701. *See also Suster II*, 149 F.3d at 533 ("Assuming that unlimited campaign expenditures are tied to corruption and some form of quid pro quo, a least restrictive means of redressing that problem, as stated by the district court, would be restricting campaign contributions, and/or mandating disqualification if violated. Simply put, there are other avenues available to Defendants to prevent corruption or the appearance of corruption, but, a limitation on campaign expenditures is not one of them.")

### (iv)

The most recent amendments to Canon VII do not cure the defects outlined by either this court or the Sixth Circuit in *Suster II*. The amendments were apparently adopted to address the concern that spending limits put judges in more populous districts at a disadvantage. Defs.' Mot. for Summ. J. at 37. According to Defendants, "the amended limits were carefully chosen after an extensive study of previous campaign expenditures, and painstakingly graduated to the population being served." *Id.*

In *Suster II*, this court noted its concern that the previous version of Canon VII(C)(6) applied to judicial candidates extremely unequally. *Suster II*, 951 F.Supp. at 700. However, as the discussion to this point reveals, the court's decision did not rest in whole or even in large part on such concern. Moreover, the Sixth Circuit's decision in no way relied on the fact that Canon VII(C)(6)'s prior spending limits put judges in more populous districts at a disadvantage. Indeed, in *Buckley*, the ceiling on senatorial campaigns was pegged to the size of the voting-age population of a state, with minimum dollar amounts applicable to campaigns in small populations. *Buckley*, 424 U.S. at 55, 96 S.Ct. at 652. This fact had no effect on the Court's decision that the expenditure limits improperly infringed on candidates' free speech rights. The court explained that the equalization of the financial resources of candidates might, in fact, have the opposite of the intended effect: "the equalization of permissible campaign expenditures might serve not to equalize the opportunities of all candidates, but to handicap a candidate who lacked substantial name recognition or exposure of his views before the start of the campaign." *Id.* at 56–57, 96 S.Ct. at 652–653.

Because Defendants have not shown "how the interests of good government could possibly be served by campaign expenditure laws that necessarily have the effect of limiting the quantity of political speech in which candidates for public office are allowed to engage," the court finds that Canon VII(C)(6) does not withstand the exacting scrutiny required to pass constitutional muster. *Suster*, 149 F.3d at 533 (quoting *Shrink Missouri Government Political Action Comm. v. Maupin*, 71 F.3d 1422, 1426 (8th Cir.1995)).

## D. *Substantive Due Process*

In Count III, Plaintiffs bring a pendent state law substantive due process claim that the Ohio Supreme Court acted outside its authority under the Ohio Constitution in promulgating the judicial campaign spending limits in Canon VII. Defendants maintain that they are entitled to Eleventh Amendment immunity against this claim. Conversely, Plaintiffs argue that because the Ohio Constitution provides that the regulation of elections are governed by the legislative branch of government, then the Ohio Supreme Court acted *ultra vires* its authority.

In *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Supreme Court held that the Eleventh Amendment bars federal courts from enjoining state officers from violating state law. Because of the importance of securing compliance with federal law, federal courts may hear federal claims against state officers under circumstances where the state itself is immune from suit. *See Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). However, since the federal system has no such need to ensure enforcement of state law, the Court saw no reason to create an exception to the Eleventh Amendment by allowing suits against state officers on pendent law claims in federal court. "[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.... We now hold that this principle applies as well to state law claims brought into federal court under pendent jurisdiction." *Id.* at 121, 104 S.Ct. 900. Plaintiffs argue that the *Pennhurst* Court recognized an exception to Eleventh Amendment immunity for state claims based on a contention that the state officer acted in excess of his or her authority. However, any discussion by the *Pennhurst* Court with regard to such a claim was intended to refute the dissent's broad view of the *ultra vires* doctrine. *Pennhurst* clearly did not address the situation in which a state officer acts in excess of lawful authority: "Since it cannot be doubted that the statutes at issue here gave petitioners broad discretion in operating Pennhurst, the conduct alleged in this case would not be *ultra vires* even under the standards of the dissent's cases." *Id.* at 110–111, 104 S.Ct. 900.

To the extent that Plaintiffs' argument has any merit, the court finds that the Ohio Supreme Court did not act *ultra vires* its authority in enacting Canon VII. "[A] state officer may be said to act *ultra vires* only when he acts without any authority whatever.... A claim of error in the exercise of [the officer's delegated] power is ... not sufficient." *Pennhurst*, 465 U.S. at 102 n. 11, 104 S.Ct. at 909 n. 11 (citations omitted). Under Article IV, § 2(B)(1)(g) of the Ohio Constitution, the Ohio Supreme Court has "original jurisdiction in the ... admission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law." Moreover, the Ohio Supreme Court has stated that "through [the Court's] inherent power and duty to maintain the honor and dignity of the legal profession of Ohio at its traditionally high level, [it] may prescribe a specialized standard of conduct for all members of such profession who hold judicial office..." *Mahoning County Bar Ass'n v. Franko*, 168 Ohio St. 17, 24, 151 N.E.2d 17, 23 (Ohio 1958). In enacting Canon VII, the Ohio Supreme Court did not usurp the legislature's authority in promulgating rules relating to qualifications for judgeships, term limits, when elections are to occur or other such regulations clearly within the province of the legislature. Rather, Canon VII may be viewed as an application of the Court's "inherent power and duty to maintain the honor and dignity" of the state's judiciary. *Id.* Thus, while this court finds Canon VII(C)(6)'s spending cap violative of the First Amendment, the Ohio Supreme Court did not act so far outside this broad authority in enacting Canon VII such that it can be said that it acted without any authority whatever. *See also In re Fadeley*, 310 Or. 548, 558, 802 P.2d 31, 37 (1991)

(finding that separation of power section in Oregon Constitution and section vesting legislative power in the Oregon Legislative Assembly did not preclude the judicial branch from regulating election activities of its members and potential members); *Judicial Qualifications Comm'n v. Lowenstein,* 252 Ga. 432, 433–34, 314 S.E.2d 107, 108 (Ga.1984) ("Courts have inherent authority to regulate the conduct of attorneys as officers of the court and to control and supervise the practice of law generally, in and out of court.... Regulation of the practice of law is the function of the judiciary.... It follows that this Court possesses the authority to regulate also the conduct of judges— including conduct during judicial elections.") (citations omitted).

Accordingly, the court finds that Defendants are entitled to judgment as a matter of law on Count III of Plaintiffs' Amended Complaint. Defendants' Motion to Dismiss Count III (Doc. No. 3) is therefore granted as moot.

### III. CONCLUSION

The court finds that the Amended Judicial Canon VII(C)(6), which limits overall spending by judicial candidates, as did the prior version of Canon VII(C)(6), but ties this limitation to the population of the candidate's judicial district, still violates the First Amendment. Both the Supreme Court and the Sixth Circuit have made it clear that a limit on the amount of money a candidate may spend to communicate his or her message to the voters, as opposed to the amount of money contributors may give to a candidate's campaign, infringes free speech rights because it necessarily has the effect of limiting the quantity of political speech in which a candidate for public office is allowed to engage. Because Canon VII(C)(6) burdens core political speech in this manner and because Defendants have not shown that the canon is narrowly tailored to serve a compelling state interest, the court finds that the canon is violative of the First Amendment. Accordingly, the court grants summary judgment in Plaintiffs' favor on this claim

and hereby enjoins Defendants from enforcing Canon VII(C)(6). However, because Canon VII(C)(8), which prohibits anyone from using money raised in a previous non-judicial campaign in a subsequent judicial campaign, does not burden political speech more than necessary to meet a compelling state interest, the court grants Defendants' motion for summary judgment on this claim. Finally, the court finds that the Ohio Supreme Court did not act *ultra vires* its authority in enacting Judicial Canon VII and therefore grants summary judgment in favor of Defendants on Plaintiffs' state law substantive due process claim.

IT IS SO ORDERED.

### JUDGMENT ENTRY

The court, having granted summary judgment to Plaintiffs on Count I, as well as the concomitant injunctive relief sought in Count V, and on Count II of their Amended Complaint and to Defendants on Count III of Plaintiffs' Amended Complaint in a separate order of this same date, hereby dismisses this action.

IT IS SO ORDERED.

### ORDER

On September 26, 2000, this court entered an order enjoining Defendants from enforcing Canon VII(C)(6) of the Ohio Code of Judicial Conduct. On September 29, 2000, Defendants filed a Motion for Stay Pending Appeal (Doc. No. 130), claiming that the injunction is overbroad because it "enjoined the enforcement of all judicial spending limits in all judicial races," thereby affording relief to individuals not before the court. Defs.' Mot. for Stay at 2. Plaintiffs filed their response on October 6, 2000, and Defendants filed their reply on October 12, 2000. For the reasons that follow, Defendants' motion is denied.

Under Rule 62(c) of the Federal Rules of Civil Procedure, a district court may suspend an injunction during the pendency of an appeal "upon such terms ... as it considers proper for the security of

the rights of the adverse party." In determining whether to grant a stay, a court is to consider the same four factors used in evaluating a preliminary injunction: (1) whether the movant has shown a probability of success on the merits; (2) whether the movant will suffer irreparable harm in the absence of a stay; (3) whether a stay would substantially harm others; and (4) whether public interest favors a stay. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 152 (6th Cir.1991).

### (1)

 Under the first prong, Defendants argue that on appeal, the Sixth Circuit is likely to find the injunction entered by this court in its September 26, 2000 order overbroad in that it affords relief to individuals not before the court. As support, they cite *Brown v. Trustees of Boston Univ.*, 891 F.2d 337 (1st Cir.1989), and *Zepeda v. United States INS*, 753 F.2d 719 (9th Cir. 1983), for the proposition that unless a class is certified, an injunction should be narrowly tailored to afford relief only to the parties to a suit.

The court finds Defendants' reliance on *Brown* and *Zepeda* to be inapposite. Unlike the instant case, neither *Brown* nor *Zepeda* involved challenges to the legality or constitutionality of a statute. Rather, in both cases, the plaintiffs challenged the application of the statutes at issue to themselves. For example, in *Brown*, the plaintiff, a tenure candidate who had been denied tenure by Boston University, brought an action alleging that the university had violated the university-faculty bargaining agreement by discriminating against her on the basis of her sex. In *Zepeda*, the plaintiffs brought an action against the INS, claiming that the INS had committed statutory and Fourth Amendment violations during enforcement operations.

To the contrary, Plaintiffs Suster and Cleary claim that Canon VII(C)(6) is un-

constitutional, not merely that the application of Canon VII(C)(6) to themselves is unconstitutional. In such a situation, the reasoning of *Brown* and *Zepeda* is inapplicable. Courts frequently enjoin the enforcement of unconstitutional or illegal statutes without narrowing an injunction to benefit only those before the court. *See e.g., Larkin v. State of Michigan Dep't of Social Serv.*, 89 F.3d 285 (6th Cir.1996) (upholding injunction enjoining state from enforcing statute restricting location of adult foster care homes and requiring neighbor notification, without limitation as to those injunction benefitted); *Dambrot v. Central Michigan Univ.*, 55 F.3d 1177 (6th Cir.1995) (upholding injunction enjoining university from enforcing discriminatory harassment policy, without limitation as to those whom injunction benefitted). Indeed, this case is not unlike *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), in this respect, in that the Court in *Buckley* did not limit its holding finding the spending limit portion of the statute at issue unconstitutional to apply to only those challenging the statute. Unlike in the as applied context, where a statute is unconstitutional, it violates the rights of all those to whom it applies, whether or not they join in an action challenging the statute. Thus, the court's focus necessarily is on prohibiting the defendants from enforcing the unconstitutional statute rather than on whom the prohibition benefits— purposely or otherwise. Furthermore, there is no reason to limit the applicability of the injunction to parties to the case, as the court did when it issued a preliminary injunction herein, *see Suster v. Marshall*, 951 F.Supp. 693 n. 12 (N.D.Ohio 1996), because the court is no longer predicting the outcome of the case. Accordingly, the court finds that Defendants are not likely to succeed in having the Sixth Circuit narrow the injunction entered in the court's September 26, 2000 order so that the injunction only applies to Plaintiffs Suster and Cleary.[1]

---

1. The court further notes that in remanding this case for consideration of amended Canon VII(C)(6), the Sixth Circuit in no way indicat-

ed that the court's consideration should be limited to the application of the canon to

As for whether Defendants are likely to succeed on their argument that Plaintiffs lack standing or that Canon VII(C)(6) complies with the dictates of the First Amendment, for the reasons stated in this court's order of September 26, 2000, the court finds that they are not. The Canon does not comply with current Sixth Circuit and Supreme Court precedent. If jurisprudence is to change in this area, it must take place in these higher tribunals.

### (2)

Because the court has already concluded that Canon VII(C)(6) violates the First Amendment, it finds that Defendants will not suffer irreparable harm in the absence of a stay.

### (3)

■■ A stay would also not substantially harm others not before the court. In fact, the opposite is true. The likelihood that others would be harmed should the court enter a stay narrowing the injunction to apply to only Plaintiffs Suster and Cleary is certain, and without question, greater than if the court left the injunction unmodified. Under Canon VII(C)(6), all candidates are unconstitutionally prohibited from expending the amount of money they deem necessary to carry their message to the voters. If only Suster and Cleary were permitted to spend amounts exceeding the applicable cap in Canon VII(C)(6), only they would have the benefit of exercising their free speech rights in a manner protected by the Constitution while all other candidates would be forced to limit the quantity of their speech to that allowed under the canon.

### (4)

Finally, because Canon VII(C)(6) is unconstitutional, the court finds that the public interest would not be served by granting a stay narrowing the injunction

Plaintiffs. *See Suster v. Marshall,* 149 F.3d

to apply to only Plaintiffs Suster and Cleary.

IT IS SO ORDERED.