**In the Matter of David M. COX.**

Supreme Judicial Court of Maine.

Argued Jan. 9, 1989.
Decided Feb. 3, 1989.

Merle W. Loper (orally), University of Maine School of Law, Portland, for Committee on Judicial Responsibility and Disability.

George Z. Singal (orally), Gross, Minsky, Mogul & Singal, Bangor, for respondent.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD, and HORNBY, JJ.

PER CURIAM.

This proceeding invokes the Supreme Judicial Court's original jurisdiction over judicial disciplinary matters.[1] The Committee on Judicial Responsibility and Disability (Committee) by its report dated September 7, 1988, alleges that District Court Judge David M. Cox, by his participation in the plea bargaining negotiations in a criminal case then pending before him, violated Canons 1, 2(A), 3(A)(1) and (4) of the Maine Code of Judicial Conduct (Code). The Committee recommends that such violations warrant the censure of Judge Cox by this Court. By stipulation of the parties, this matter is submitted, on the pleadings before this Court and the pleadings and record before the Committee,[2] for this Court's decision on questions of both fact and law. Before us the Committee bears the burden of proving the allegations contained in its report by a preponderance of the evidence.

I

On September 25, 1986, the case of *State v. Simmons* (Bangor District Court Docket No. 86–CR–8717), in which Simmons was charged with assault (Class D)[3] in violation of 17–A M.R.S.A. § 207 (1983 & Supp. 1988), was scheduled for trial before Judge Cox. Simmons had previously entered a not guilty plea to the charge. At approximately 11:30 a.m. on that day, counsel for the State and for Simmons were in the

---

1. The procedure followed in judicial disciplinary proceedings is set forth in the *Matter of Ross*, 428 A.2d 858, 859–60 (Me.1981).

2. At oral argument, the parties further stipulated that the transcript of the post-conviction review proceedings in *Simmons v. State of Maine*, Superior Court (Penobscot County)

Docket No. CR–86–893, be made a part of the record before this Court.

3. 17–A M.R.S.A. § 1252 (1983 & Supp.1988) provides that a prison sentence up to 364 days may be imposed as a sentence for a Class D offense.

anteroom of Judge Cox's chambers when Judge Cox entered the room. In response to an inquiry by Judge Cox, the counsel for Simmons advised Judge Cox the disposition of Simmons' case would be by trial. A conversation ensued in which Judge Cox initiated a detailed discussion of plea alternatives available to Simmons. During the discussion, Judge Cox proposed the sentence that would be imposed if Simmons were to forego a trial and enter a plea of guilty, with a significantly more severe sentence if he were tried and found guilty of the charge. After some further discussion, counsel for the State acceded to the alternative to the trial of the case as proposed by Judge Cox. Counsel for Simmons left the anteroom to communicate the proposal to Simmons, who was in another room. Simmons was not advised by his attorney that Judge Cox had originated the proposal. Simmons refused to forego his right to a trial, and Judge Cox and counsel for the State were so advised. Later that day the matter was tried before Judge Cox who found Simmons guilty of the charged assault and imposed a jail sentence for a period of nine months.

This matter came to the attention of the Committee in October 1987, when Simmons petitioned the Superior Court (Penobscot County) for post-conviction review of the proceedings in *State v. Simmons*, pursuant to 15 M.R.S.A. §§ 2121–2132 (Supp.1988).[4] By his post-conviction petition, Simmons alleged that he had been denied a fair trial by reason of the judicial misconduct of Judge Cox in participating in plea negotiations. After a hearing, the Superior Court held that Simmons had received a fair trial, but the sentencing was tainted by the pretrial discussions between Judge Cox and counsel. The Superior Court vacated the sentence imposed on Simmons and remanded the matter to the District Court for imposition of a sentence by a District Court judge other than Judge Cox.

## II

■ The issue presented before us today does not invoke our authority to sit as an appellate court to review the judgment of the Superior Court in the post-conviction matter of *Simmons v. State of Maine*. Rather, we sit as the court of original jurisdiction to determine whether in fact Judge Cox violated Canons 1, 2(A), 3(A)(1) and (4) of the Code.

The Code of Judicial Conduct establishes minimum standards of conduct that must be observed by judges in order to preserve and maintain the independence and integrity of this State's judiciary. *Matter of Benoit*, 523 A.2d 1381, 1382 (Me.1987). The essence of the Code is expressed in Canon 1:

> An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

Canon 2(A) further provides:

> A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

A judge who fails to conform his conduct to the minimum standards of other Canons of the Code is, by definition, in violation of the general requirements of Canons 1 and 2(A). *Benoit*, 523 A.2d at 1382.

In recognition that public confidence in the judicial system rests on fairness in the administration of justice, Canon 3 is designed to ensure that judges act impartially in the performance of their judicial responsibilities. *Benoit*, 523 A.2d at 1382. Spe-

---

**4.** Under the post-conviction statutes, a person may challenge a criminal judgment or sentence on the grounds that the sentence is unlawful or was unlawfully imposed. In order to qualify for such review, the individual must demonstrate that the challenged criminal judgment or post-sentencing proceeding is causing a present restraint or other specified impediment; and must demonstrate that he has previously exhausted remedies incidental to proceedings in the trial court and on appeal or any available administrative remedies.

cifically, Canon 3(A)(1) provides: "A judge should be faithful to the law and maintain professional competence in it." Canon 3(A)(4) further states, "A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law." This right encompasses not only the proceedings at the actual trial of a matter, but all court procedures preliminary to the trial and the post-trial proceedings including that of sentencing in a criminal case. As stated in the Canon, the right is extended not only to the parties to a proceeding but to their lawyers.

When a judge participates in the specifics of a plea negotiation, that behavior runs afoul of the fundamental values set forth in these Canons. It also transgresses the explicit provision of Rule 11(e) of the Maine Rules of Criminal Procedure that "the court shall not participate in the negotiation of the specific terms of the plea agreement"; and ignores case law that clearly limits the judge's role in plea negotiations. See State v. Chesnel, 358 A.2d 381, 384 (Me.1976) (court does not sanction comments by a judge suggesting that sentences differ depending on whether the defendant pleads to a charge or is tried).

There are strong and persuasive reasons for limiting the role of the trial judge in plea negotiations. Specifically, four interests may be compromised when a judge assumes the role of a plea negotiator—those of the defendant, the system of justice, the prosecutor and the judiciary.

First, the constitutionally protected rights of the defendant become vulnerable. Because the court is endowed with substantial sentencing discretion, participation by the court in plea negotiations may have a coercive impact on those "person[s] who [are] legally interested in a proceeding." See Maine Code of Jud. Conduct Canon 3(a)(4) and 1 D. Cluchey & M. Seitzinger, Maine Criminal Practice, § 11.8 (1987). The defendant may fear that a rejection of the plea bargain will result in a more severe sentence after trial or decrease his chances of obtaining a fair trial before the judge he has thus challenged. As Judge Weinfeld wrote:

The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence. One facing a prison term, whether of longer or shorter duration, is easily influenced to accept what appears the more preferable choice. (Footnote omitted).

United States v. Werker, 535 F.2d 198, 202 (2d Cir.1976) (quoting United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244, 254 (S.D.N.Y.1966)).

Second, when a judge fails to comply strictly with the rule precluding a judge from participating in the negotiating of the specific terms of a plea, the economy and efficiency gained by the judicial system by allowing plea agreements is placed in jeopardy. Whether a defendant accepts or rejects the judge's offer, the fair and expeditious disposition of the charges is rendered more difficult and uncertain. If a defendant yields to the judge's offer, he may later claim that he be allowed to withdraw his guilty plea on the ground that it was coerced by the judge. If he rejects the judge's offer and after a trial is found to be guilty of the charged offense, he may claim that the sentence imposed should be set aside on the ground that it was not punishment for the offense committed but a penalty for the rejection of the judge's offer.

Tainted guilty pleas must be set aside; tainted sentences must be vacated. Even though a defendant's claim may prove to be unfounded, judicial time and resources must be expended to reach that determination. In those instances when the judge

recuses himself from presiding at trial on rejection by a defendant of the judge's offer, it requires the substitution of another judge for the trial. This necessarily adds to the delay in disposition of the case and affects not only that defendant but other defendants and their counsel as well. *See United States v. Werker,* 535 F.2d 198 (2d Cir.1976); *United States v. Adams,* 634 F.2d 830 (5th Cir.1981).

Third, when a judge offers a lenient sentence to a defendant charged with a criminal offense in exchange for a guilty plea, he usurps the function of the attorney for the State. It lies within the province of the executive branch of the State through the offices of its attorneys to expose to a public trial any person charged with a violation of the law. A judge who proposes a plea bargain that would impair the normal prosecution of a criminal offense or result in a termination of the prosecution interferes with that executive function and implicates the doctrine of the separation of the powers of the executive and judicial branches of government.

Finally, undue participation in the plea bargaining process taints the public's perception of the trial judge. *United States v. Werker,* 535 F.2d at 203. As a result of such participation, the judge may no longer be seen as a judicial officer or a neutral arbiter but as an advocate for the resolution that he has suggested to the defendant. *Id.* It allows a basis for doubting the impartiality of the judge, thus eroding the public confidence in the judicial system and bringing into question the fairness of the administration of justice.

### III

■ We determine that Judge Cox's participation in the plea bargaining process in the matter of *State v. Simmons,* then pending before him, was in disregard of the rule limiting such participation and strikes at the heart of the public's perception of judicial impartiality. Accordingly, we hold that Judge Cox violated Canons 1, 2(A), 3(A)(1) and (4) of the Code, and such violations require the imposition of a disciplinary sanction. In choosing an appropriate sanction to impose in this case, we have in mind what we have previously said about the purposes of judicial discipline:

The purpose of sanctions in cases of judicial discipline, ... is not vengeance or retribution. Those concepts have no place in a disciplinary system designed to assure the orderly administration of justice in the public interest. Any sanction must be designed to preserve the integrity and independence of the judiciary and to restore and reaffirm the public confidence in the administration of justice. Any sanction must be designed to announce publicly our recognition that there has been misconduct; it must be sufficient to deter the individual being sanctioned from again engaging in such conduct and to prevent others from engaging in similar misconduct in the future. Thus, we discipline a judge to instruct the public and all judges, ourselves included, of the importance of the function performed by judges in a free society. We discipline a judge to reassure the public that judicial misconduct is neither permitted nor condoned.

*Matter of Ross,* 428 A.2d 858, 868–69 (Me. 1981). We believe that the sanction of a public reprimand of Judge Cox will fulfill these purposes.

It is ADJUDGED that Judge David M. Cox has violated Canons 1, 2(A), 3(A)(1) and (4) of the Code of Judicial Conduct.

It is ORDERED that Judge David M. Cox be, and he hereby is, reprimanded for those violations.

All concurring.